Stanley N. PARKER, D.M.D.,
Plaintiff-Appellee,

v.

COMMONWEALTH OF KENTUCKY,
BOARD of DENTISTRY; et al.,
Defendants-Appellants.

No. 86–5509.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 20, 1987.

Decided May 5, 1987.

basis.

David L. Armstrong, Atty. Gen. of Ky., Frankfort, Ky., Greg Holmes, argued, for defendants-appellants.

M. Kevin Lett, argued, Gray, Woods and Cooper, Ashland, Ky., William W. Jacobs, Regional Director, Cleveland, Ohio, for plaintiff-appellee.

Before MARTIN and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

The Commonwealth of Kentucky, Board of Dentistry (the Board) and the individual members of the Board appeal from a district court's order finding that certain provisions of the Kentucky Revised Statutes governing the licensing of dentists were unconstitutionally applied to plaintiff, Stanley N. Parker, D.M.D., in violation of the First and Fourteenth Amendments. Subsequent to our hearing oral arguments in this case, we requested the parties to file supplemental briefs focused on whether the district court should have abstained from exercising jurisdiction over this case under the doctrine enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and most recently applied in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* —— U.S. ——, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). For the following reasons, we find the *Younger* doctrine inapplicable, and affirm the district court's judgment.

## I.

Stanley N. Parker is a dentist, licensed to practice general dentistry in the Commonwealth of Kentucky. Under Kentucky law, a dentist can choose to be licensed as a general practitioner or as a specialist in any of the seven recognized branches of dentistry, one of which is orthodontia. Ky. Rev.Stat.Ann. § 313.400(1)(b).[1] To become a specialist, a dentist must acquire a spe-

---

1. The other recognized branches of dentistry are oral surgery, pedodontia, periodontia, prosthodontia, oral pathology and public health. Kentucky also recognizes as a specialty, "[a]ny other field of specialty duly recognized and approved by the American Dental Association." Ky.Rev. Stat.Ann. § 313.400(1)(h).

cialty license from the Kentucky Board of Dentistry, the state agency responsible for licensing and regulating the practice of dentistry. Once a specialty license is acquired for any of the areas of specialty recognized by section 313.400, a dentist is required to limit his or her practice to the area of licensed specialization. Ky.Rev. Stat.Ann. § 313.445(1). If a specialty license is acquired, the dentist may announce to the general public that he "specializes" or is a "specialist" in that particular branch of dentistry. Ky.Rev.Stat.Ann. § 313.410.

In contrast, general practitioners may perform services in any or all of these branches of dentistry. Ky.Rev.Stat.Ann. § 313.445(2). Although a general practitioner is not prohibited from performing dental services in the areas of specialization, he is prohibited by statute from holding himself out to the public as a specialist, or as being "especially qualified," in a particular branch of dentistry. The statute specifically prohibits "inserting the name of the specialty, or using other phrases customarily used by qualified specialists that would imply to the public that he is so qualified...." Ky.Rev.Stat.Ann. § 313.-410.[2] If a dentist is found to have held himself out to the public as being "especially qualified" in one of the areas of dentistry for which he has not obtained a specialty license, the Board is empowered to revoke, suspend or refuse to renew his license for having committed "unprofessional conduct." Ky.Rev.Stat.Ann. §§ 313.140(4), 313.130(3).[3]

As a general practicing dentist, therefore, Parker is permitted under Kentucky law to perform services in any of the recognized branches of dentistry. Parker does perform orthodontic procedures; in fact, he has over 200 hours in continuing education in that field, and orthodontia comprises approximately fifty percent of his practice. However, he is nevertheless prohibited from holding himself out to the public as being especially qualified in orthodontia.

In June 1985, Parker placed an advertisement in the Ashland, Kentucky Yellow Pages under the heading "Dentists." The advertisement was headed by the phrase "COMPLETE DENTAL CARE," and was followed by a listing of services such as "Hidden Partials & Bridges," "Orthodontics ... with Clear & Metal Brackets," and "Orthodontics without Braces...." *See* Appendix to Opinion of the Court. The advertisement also specified that Parker was a member of the American Dental Association, the American Orthodontic Society and the American Association of Functional Orthodontists.

After this advertisement appeared in the Yellow Pages, the Board instituted disciplinary proceedings against Parker, charging that Parker had committed unprofessional conduct. Specifically, the Board asserted that by using the words "orthodontics," "braces," "brackets" and similar terms in his advertisement, Parker had violated section 313.410 by holding himself out to the public as especially qualified in the specialty of orthodontia. He was also charged with failure to comply with an order to cease and desist this advertising. Parker was notified that a hearing on these charges was scheduled for November 16, 1985, to be conducted in accordance with Ky.Rev.Stat.Ann. §§ 313.150–.180.

**2.** Section 313.410 provides in full:
No licensed dentist shall hold himself out to the public as being especially qualified in any branch of dentistry by announcing through the press, sign, card, letterhead or printed matter, or any means of public advertising using such terms as "specialist," or inserting the name of the specialty, or using other phrases customarily used by qualified specialists that would imply to the public that he is so qualified, without first securing a specialist's license for same as provided in this chapter.

**3.** Section 313.140(4) provides:
Unprofessional conduct does not include the use of professional cards that contain only a name, title (such as D.D.S. or D.M.D.), address, telephone number and office hours. It is unprofessional conduct for any dentist to announce or hold himself out to the public as being especially qualified in any branch of dentistry without having obtained a license as a specialist therein from the board.
Section 313.130(3) empowers the Board to discipline a dentist for "unprofessional conduct."

The hearing, however, was rescheduled to a later date, and was subsequently held in abeyance. On December 26, 1985, Parker filed the instant complaint in the United States District Court for the Eastern District of Kentucky, seeking to enjoin the Board, both preliminarily and permanently, from disciplining him, and seeking a declaratory judgment that his advertisement was protected from suppression by the First and Fourteenth Amendments.[4]

On February 7, 1986, Parker received notice from the Board that the hearing on the charges, which had previously been held in abeyance, was rescheduled for March 14, 1986. On February 26, 1986, Parker filed a motion for a preliminary injunction and temporary restraining order pursuant to Fed.R.Civ.P. 65, seeking to enjoin the upcoming disciplinary hearing. Pursuant to 28 U.S.C. § 636(c)(1) and (2), the case was assigned to a United States magistrate on March 5, 1986, for consideration of all issues and entry of final judgment in accordance with the parties' stipulation. Thereafter, a hearing on Parker's motion was scheduled for March 10; however, the hearing was subsequently cancelled because defendants agreed to continue the scheduled disciplinary hearing, and because the parties agreed to submit factual stipulations to the court for the purpose of disposing of the case on cross-motions for summary judgment. The parties filed such stipulations on March 28, 1986, and oral arguments were held on April 14, 1986.

On April 18, 1986, the magistrate issued an order holding that the Kentucky statutory provisions were unconstitutional under the First and Fourteenth Amendments as applied to Parker. The magistrate reasoned that since plaintiff, being a general practitioner, was qualified and licensed to provide orthodontic services, his advertisement was "no more than a listing of his areas of practice." The magistrate concluded that a state could not institute an absolute ban on the use of such terms if the information could be presented in a nonmisleading or nondeceptive manner. The magistrate reasoned that Parker had not presented himself as a specialist but had merely provided the public with truthful information. Since the information in the instant case could be, and was, presented in a way which was not deceptive, the magistrate concluded that the prohibition on the use of such terms was unconstitutional, principally resting his conclusion on the Supreme Court decisions, *In re R.M.J.*, 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982) and *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). The magistrate accordingly enjoined defendants from continuing the disciplinary proceedings against Parker. The magistrate stayed the injunction pending this timely appeal, however, based upon defendants' assurance that they would hold the disciplinary proceedings in abeyance.[5]

## II.

Before we can reach the merits of the issues raised by the parties, we must first determine whether the district court should have abstained from exercising jurisdiction over this case pursuant to the doctrine enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. *Younger* abstention represents a "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). In fact, the Court in *Younger* noted that because of the concern with principles of federalism and comity, "the normal thing to do when federal courts are asked to enjoin pending proceedings in state court is not to issue such injunctions." *Younger*, 401 U.S. at 45, 91 S.Ct. at 751. Due to the ongoing state

---

**4.** The complaint also alleged that plaintiff's right to advertise was protected under the antitrust laws, but that claim was subsequently abandoned and is not before this court on appeal.

**5.** Since the parties consented to have the magistrate enter final judgment in the case the appeal was made directly to this court in accordance with 28 U.S.C. § 636(c)(3).

proceedings involved in the instant case and plaintiff's request to enjoin such proceedings, we believed it necessary to address the issue of abstention and requested the parties to file supplemental briefs solely on that issue. However, because we find that one of the essential elements for *Younger* abstention is lacking, we conclude that the district court properly exercised jurisdiction over this case.

In determining whether *Younger* abstention should apply in a particular case, there are three pertinent inquiries. First, the court must determine whether state proceedings, including administrative proceedings, are pending. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* — U.S. —, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986) (recognizing that *Younger* abstention applies to ongoing state administrative proceedings). Second, the state proceedings must involve an important state interest. Third, the court must determine whether the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims. *See Middlesex County Ethics Comm.,* 457 U.S. at 432, 102 S.Ct. at 2521. While we find that the first two elements are satisfied, we conclude that the third is not.

As was noted above, it is clear that plaintiff in this case sought to enjoin ongoing state proceedings and that the proceedings are presently being held in abeyance. Hence, since *Younger* applies to administrative as well as judicial proceedings, the first element of the *Younger* test is satisfied.

The second predicate for applying the *Younger* abstention doctrine is also met, since these proceedings involve an important state interest—namely, licensing of dentists and assuring professional conduct of dentists. *Cf. Middlesex County Ethics*

*Comm.,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (holding that the state had an important interest in assuring professional conduct of licensed attorneys).

Having concluded that an important state interest is implicated in an ongoing state proceeding, the *Younger* abstention principles are rendered applicable. *Middlesex County Ethics Comm.,* 457 U.S. at 435, 102 S.Ct. at 2522. The remaining inquiry in determining whether abstention is appropriate in this case is whether Parker will be afforded an adequate opportunity to present his constitutional claims in the state proceedings. We find that state law does not provide him with the type of opportunity which triggers *Younger* abstention.

We first note that while the state administrative proceedings themselves may not provide plaintiff an opportunity to raise his constitutional claims, the appropriate inquiry as indicated by the Supreme Court in *Dayton Christian Schools,* is whether the "constitutional claims may be raised in state court judicial review of the administrative proceeding." 106 S.Ct. at 2724. Appellants argue that Ky.Rev.Stat.Ann. § 313.180 provides for judicial review of disciplinary proceedings conducted before the Kentucky Board of Dentistry.

We acknowledge that section 313.180 provides for judicial review of some disciplinary proceedings before the Kentucky Board of Dentistry; however, judicial review is provided by statute *only if* the Board determines to *revoke* a dentist's license.[6] Thus, while the Board has statutory authority to revoke, suspend or refuse to renew a dentist's license, *see* Ky.Rev. Stat.Ann. § 313.130, a dentist has a statutory right to judicial review only if his license is revoked. In contrast, dental hygienists have a right to appeal from an "order revoking, suspending or refusing to

---

6. Section 313.180 provides in pertinent part:

**Appeal from order of revocation**

A licensee whose license has been revoked by the board may appeal from the revocation order within thirty (30) days of the cancellation of his license. The appeal shall be to the circuit court of the county in which the board met to revoke the license.... The clerk of

the circuit court shall docket the case, and it shall be tried in all respects like an ordinary civil action. Either party may appeal from the judgment of the circuit court to the Court of Appeals as in a civil action. The judgment shall be stayed from the date of the approval of the bond until final determination of the appeal.

renew" a license. *See* Ky.Rev.Stat.Ann. § 313.340; *Reynolds v. Kentucky State Bd. of Dental Examiners*, 280 S.W.2d 539 (Ky.Ct.App.1955). In *Reynolds*, the court held that section 313.180 provides for an appeal "to the circuit court from an order *revoking* a license, but there is no provision for an appeal from an order *suspending* a license." *Id.* at 540 (original emphasis).[7] The court held that a dentist's only recourse in state courts when his license is suspended is to file a collateral, independent lawsuit challenging the Board's decision.

In the instant case, there is no guarantee that the Board will decide to revoke Parker's license, since clearly it has the power to decide only to suspend Parker's license for a period of time. If that were to occur, Parker would be unable to raise his constitutional claims presented here unless he filed a separate state court action. We find that an opportunity for judicial review which is contingent upon the type of disciplinary action taken is insufficient to trigger *Younger* abstention. Rather, for a federal court to abstain from reaching the merits of a case under *Younger*, it must be assured that there exists a definite opportunity for the federal plaintiff to raise his constitutional claims on direct state judicial review of the state administrative proceedings. Since that is clearly not the case here, abstention is inappropriate and we may reach the merits of this case.[8]

### III.

■ The Supreme Court's decision in *Virginia Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), firmly established that "commercial speech"— speech which proposes a commercial transaction—enjoys the protections of the First Amendment. *See also Bigelow v. Virginia*, 421 U.S. 809, 818–21, 95 S.Ct. 2222, 2230–32, 44 L.Ed.2d 600 (1975). This does not mean, of course, that commercial

speech is completely shielded from state regulation. To the contrary, as with other forms of speech, a state is permitted to enact reasonable time, place and manner restrictions, *Virginia Pharmacy*, 425 U.S. at 771, 96 S.Ct. at 1830; and, advertising which is false, misleading or deceptive, or which proposes an illegal transaction, is not protected by the First Amendment from state regulation. *Id.* at 771–72, 96 S.Ct. at 1830–31. The Court in *Virginia Pharmacy* noted further that advertising which was potentially misleading, particularly with respect to the rendering of professional services such as law and medicine, could possibly be subject to some form of regulation. *Id.* at 773 n. 25, 96 S.Ct. at 1831 n. 25.

■ If a state regulates speech which is potentially misleading, the Supreme Court has since clarified that, because of the First Amendment protections at stake, "the preferred remedy is more disclosure, rather than less." *Bates v. State Bar of Arizona*, 433 U.S. 350, 375, 97 S.Ct. 2691, 2704–05, 53 L.Ed.2d 810 (1977). To prefer more disclosure over an outright ban on particular forms of advertising not only protects the advertiser's right to communicate, but also protects the general public's interest in receiving information. *Bates*, 433 U.S. at 375, 97 S.Ct. at 2704. Accordingly, to regulate commercial speech which is not misleading or which is only potentially misleading, a state must articulate a substantial interest, and the regulation must be narrowly tailored to meet that interest. *See In re R.M.J.*, 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982); *Posadas de Puerto Rico Assocs. v. Tourism Co.*, —— U.S. ——, 106 S.Ct. 2968, 2976, 92 L.Ed.2d 266 (1986).

In *In re R.M.J.*, the state, by statute, had attempted to require attorneys to use only specific words to describe the nature of their law practice. In listing his areas of practice, however, the plaintiff had deviated from the specific terminology listed in

---

7. The court specifically noted that section 313.-340 did not provide a right to judicial review to dentists, but only to dental hygienists.

8. Because of our disposition, we find it unnecessary to address plaintiff's claim that the Board consented to have the federal courts resolve the issues in dispute.

the state statute, and the state thereafter sought to suppress his advertisement. The Court struck down the statute, holding that "rules preventing attorneys from using nondeceptive terminology to describe their fields of practice are impermissible...." *Zauderer v. Office of Disciplinary Council*, 471 U.S. 626, 638, 105 S.Ct. 2265, 2275, 85 L.Ed.2d 652 (1985) (explaining *In re R.M.J.*). Accordingly, a state may not prevent the use of certain words in a lawyer's advertisement if those words are not deceptive or inherently misleading and if those words and the information they convey can be presented in a nonmisleading way.

Defendants assert that the field of dentistry presents a unique dilemma because Kentucky has chosen to distinguish between general practitioners and specialists, and to actually require additional training requirements and an additional license to become a specialist. We find that these factors do not render the principles enunciated in *Bates* and *In re R.M.J.* inapplicable. Although there are distinctions between the professions of dentistry and law, we do not detect that the description of services performed by dentists is any more inherently or potentially misleading than those performed by lawyers. We therefore find that traditional First Amendment commercial speech analysis applies in the context of dental advertising.

■ In the instant case, as in *In re R.M.J.*, the state seeks to prevent dentists from using particular terminology unless they are licensed as a specialist in the branch of dentistry associated with such terminology. It is argued that such words as "orthodontics," "brackets," and "braces" are either inherently or potentially misleading in that the general public will believe that such a dentist is a "specialist" in the area of orthodontics. We cannot agree that such terms are inherently misleading. Such terms are not false, but actually describe procedures which a general practicing dentist is permitted to perform under state law. If a state permits a dentist to perform orthodontic procedures, we do not believe a state can justify an outright ban on the use of particular terms relating to orthodontics on the theory that such terms inherently mislead the public. To the contrary, by suppressing such speech, the public will possibly be misled into believing that only orthodontists can perform orthodontic procedures. Since this information is truthful and relates to a lawful activity, it is entitled to First Amendment protection. *In re R.M.J.*, 455 U.S. at 203, 102 S.Ct. at 937.

■ Further, we believe that even assuming this information could be classified as potentially misleading, the state's outright prohibition on the use of these terms cannot be justified. As stated in *In re R.M.J.*, "the States may not place an absolute prohibition on certain types of potentially misleading information, e.g., a listing of areas of practice, if the information also may be presented in a way that is not deceptive." 455 U.S. at 203, 102 S.Ct. at 937. It is evident, as noted above, that a term such as "orthodontics" is not in and of itself deceptive; rather, it conveys information regarding dental procedures which either a general practicing dentist or a dentist specializing in orthodontia may perform.[9] It is equally evident that these terms and the information they convey can be presented in a way which does not mislead the public into believing that a general practicing dentist is a dentist with an orthodontia specialty license. A disclaimer to such an effect would adequately address the state's concern. Further, plaintiff's advertisement in the instant case is illustrative of how additional information can serve to inform the public that a dentist is a general practitioner. By including the phrase "COMPLETE DENTAL CARE," and by listing this advertisement under the heading "Dentists" and not "Dentists-Orthodontists," plaintiff is informing the public that he is a general practitioner who provides orthodontic services as part of his general practice.

We in no way imply that a state does not have a substantial interest in enabling the

---

9. "Orthodontics" is defined as: "That branch of dentistry which deals with the prevention and correction of irregularities of the teeth and mal-occlusion, and with associated facial problems." Dorland's Illustrated Medical Dictionary 1062 (24th ed. 1965).

public to distinguish between general practitioners and specialists or in ensuring the professional conduct of dentists. Such interests in this context, however, can be furthered by requiring more disclosure; an outright ban on the use of specific, nonmisleading terms is simply not narrowly tailored to meet the state's concern. *In re R.M.J.*, 455 U.S. at 203, 102 S.Ct. at 937. Although a state has the power to regulate in the field of dentistry and has an interest in protecting the public, articulating a legitimate state interest does not end the inquiry—these interests must be furthered within the confines of, and are limited by, the First Amendment. In the instant case, the state has unconstitutionally restricted commercial speech in furthering its interests.

▆ To the extent that section 313.410 prevents general practicing dentists from "inserting the name of the specialty" into an advertisement, we find it unconstitutional under the First and Fourteenth Amendments. Similarly, sections 313.410, 313.-130(3) and 313.140(4) are unconstitutional as applied to Parker inasmuch as these provisions have been interpreted to prevent Parker from using other terms to describe his practice which are not misleading or deceptive under the theory that such words are "phrases customarily used by qualified specialists." Accordingly, we AFFIRM, as modified, the magistrate's judgment.

DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.

I agree that this court can and should reach the merits of this case, and I agree also that it is not necessarily misleading for a dentist who practices orthodontia to use that term in telling the public what he does. Notwithstanding that Dr. Parker's advertisement had no more than minimal potential to mislead, however, it seems to me that a substantial governmental interest could reasonably be found to have been served by the regulatory scheme of which the prohibition of such advertisements is an integral part. Accordingly, I must dissent from the conclusion that Chapter 313 of the Kentucky Revised Statutes is unconstitutional insofar as it prevents the advertising of orthodontic services by those who are not licensed orthodontists.

The practice of general dentistry and of the various dental specialties is subject to close regulation by the state. If, as the Supreme Court has told us, the Commonwealth of Virginia "is free to require whatever professional standards it wishes of its pharmacists," *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 770, 96 S.Ct. 1817, 1829, 48 L.Ed.2d 346 (1976), I take it that the Commonwealth of Kentucky is free to require whatever professional standards it wishes of its dentists and orthodontists. As noted at the outset of the court's opinion in this case, Kentucky's Board of Dentistry is authorized to issue "specialty licenses" in orthodontia and a number of other dental specialties. A dentist who acquires a specialty license is required to limit his or her practice to the area of licensed specialization. Ky.Rev.Stat.Ann. § 313.445(1). Kentucky law currently permits general practitioners to engage in the practice of orthodontia and other dental specialties, but I take it as given that the Kentucky legislature could, if it were disposed to do so, prohibit the practice of orthodontia by anyone not holding a specialty license as an orthodontist. We can have no assurance that the Kentucky legislature will not respond to today's decision by doing precisely that.

Echoing a theme sounded by the United States Supreme Court in *Bates v. State Bar of Arizona*, 433 U.S. 350, 375, 97 S.Ct. 2691, 2704, 53 L.Ed.2d 810 (1977) and *In Re R.M.J.*, 455 U.S. 191, 201, 102 S.Ct. 929, 936, 71 L.Ed.2d 64 (1982), this court suggests that "the preferred remedy" for any potentially misleading professional advertisement "is more disclosure, rather than less." As a citizen, I am not unsympathetic to the proposition that more disclosure is "preferred"; as a judge, however, I consider myself powerless to require the Kentucky legislature to choose a remedy I might prefer over remedies which, although contrary to my personal view of the public interest, would be invulnerable to attack on constitutional grounds. I have no idea how likely it is that Kentucky will now prohibit its Dr. Parkers from practicing orthodontia at all, but the very fact

that such a possibility exists casts considerable doubt, in my view, on the propriety of our action here.

Most legislative acts reflect compromises of one kind or another. It is at least conceivable that the Kentucky legislature's decision to allow general practitioners to practice orthodontics as long as they do not advertise the fact represents a compromise between those who would have preferred no restrictions on general practitioners and those who would have preferred not to let general practitioners engage in orthodontics at all. Such a compromise might not be the most intellectually satisfying piece of legislation in the world, but it seems to me that a non-elected judiciary, unaware of the considerations that led to adoption of the compromise in the first place and ignorant of the consequences likely to follow from its abrogation, ought not to take the drastic step of invalidating the legislative solution unless there is no conceivable basis on which it can be squared with the language of the Constitution.

Although advertising is entitled to the protection of the First Amendment, even when the "product" advertised consists of professional services, the constitutional protection accorded such "commercial speech" is less extensive than that afforded speech of a kind not traditionally subject to government regulation. *Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 455–56, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978); *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 562–63, 100 S.Ct. 2343, 2349–50, 65 L.Ed.2d 341 (1980); *Zauderer v. Office of Disciplinary Council,* 471 U.S. 626, 637, 105 S.Ct. 2265, 2274, 85 L.Ed.2d 652, 663 (1985). Permissible restrictions on commercial speech include, but are not limited to, "time, place and manner" regulations, prohibitions against advertising that is false or deceptive, and strictures against advertising that proposes an illegal transaction. *Virginia Pharmacy,* 425 U.S. at 770–71, 96 S.Ct. at 1829–30; *Pittsburgh Press Co. v. Human Relations Commission,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). This list of permissible restrictions is illustrative, not exclusive. *Virginia Pharmacy,* 425 U.S. at 770,

96 S.Ct. at 1829. It is true that the Supreme Court, in *In re R.M.J.,* 96 S.Ct. at 1829, "went so far as to state that 'States may not place an absolute prohibition on certain types of potentially misleading information [e.g., a listing of areas of practice,] if the information also may be presented in a way that is not deceptive,'" *Zauderer,* 471 U.S. at 644, 105 S.Ct. at 2278, 85 L.Ed.2d at 668, quoting *In re R.M.J.,* 455 U.S. at 203, 102 S.Ct. at 937, but this "dictum", as *Zauderer* calls it, does not require us to invalidate a prohibition on the listing of areas of practice by unlicensed practitioners if the prohibition "directly advances a substantial governmental interest." *Zauderer,* 471 U.S. at 641 and 644, 105 S.Ct. at 2277 and 2279, 85 L.Ed.2d at 666 and 668, "Substantial governmental interest" is a phrase that can obviously cover a multitude of sins, and it is one that I should have thought expansive enough to cover Chapter 313 of the Kentucky Revised Statutes.

The Federal Trade Commission, in an amicus brief urging affirmance of the district court's judgment, has argued very persuasively that "there are sound reasons of economics and policy for encouraging vigorous commercial competition among professionals." The question before us is not a question of "economics and policy," however, but a question of constitutional law. The Constitution, as Mr. Justice Holmes once observed, does not enact the *Social Statics* of Mr. Herbert Spencer, and as Justice Rehnquist said in his *Virginia Pharmacy* dissent, "there is certainly nothing in the United States Constitution which requires the Virginia Legislature to hew to the teachings of Adam Smith in its legislative decisions regulating the pharmacy profession." 425 U.S. at 784, 96 S.Ct. at 1836.

It may well be true, as the FTC argues, that Kentucky's regulatory scheme has "adverse effects on competition and consumer welfare," just as it may well be true, as the Chairman of the Legal Services Corporation has recently argued, that statutes prohibiting the unauthorized practice of law cannot be justified in terms of economic efficiency. See "Clash Over Legal Services," A.B.A. Journal/April 1, 1987, at 17. I take it that nothing in the United States

Constitution requires the several states to permit intelligent and literate lay people to practice law and advertise that they do so, however, and if state legislatures may enact laws that limit the supply and increase the prices of legal services—an economic "good" the consumers of which seldom face anything worse than bankruptcy or jail—surely legislatures have at least as much discretion when dealing with the healing arts, where the consumers' very lives may hang in the balance.

The fact that Dr. Parker himself happens to be highly skilled in orthodontics is, I believe, immaterial. If Dr. Parker does not choose to become a licensed orthodontist, the state need not allow him to practice orthodontia regardless of whether the public would benefit from his doing so; the validity of general laws does not depend upon their having a beneficial effect in every individual application. But if the state has the power flatly to prohibit the practice of orthodontia by persons not licensed as orthodontists, imposition of the far less drastic restriction heretofore chosen by the Kentucky legislature ought to pass muster too, it seems to me. The less drastic restriction presumably means that orthodontic services will be more widely available, at lower cost, than would be the case if the more drastic restriction were adopted, even as it imposes at least a modest impediment to the sale of such services by a class of persons who, as a group, may reasonably be assumed to possess a lower level of skill in orthodontia than that possessed by Kentucky's licensed orthodontists. Not an elegant reconciliation of conflicting interests, perhaps, but an acceptable one, in my view.

What Roberto Unger has called "the standard disenchanted view of legislative politics" may tempt judges who enjoy life tenure to assume that they are better situated to discern the public interest than those who must answer to the public at election time. I do not share that assumption or the "standard" disenchantment with representative government. Even if I thought the courts uniquely qualified to determine what is in the public interest, however, I doubt that I could be shaken in my belief that the public interest itself requires courts to recognize that there is a very broad range of matters on which legislatures must be accorded the right to be wrong. The present case, in my judgment, falls within that broad range. If the Kentucky legislature has made a mistake, I do not think it is a mistake of constitutional magnitude; and I question the soundness of a judicial decision which, in attempting to correct a perceived mistake by the legislature, may simply encourage the legislature to make a bigger mistake, and one that we would be powerless to correct.

### APPENDIX

PARKER STANLEY N. DS MS DMD

**COMPLETE DENTAL CARE**

INCLUDING
  COSMETIC DENTISTRY
  FULL MOUTH RECONSTRUCTION
  HIDDEN PARTIALS & BRIDGES
  ORTHODONTICS FOR ALL AGES
    WITH CLEAR & METAL BRACKETS
  ORTHODONTICS WITHOUT BRACES
    FOR PATIENTS AGES 8 TO 16
    IN ⅓ TO ½ THE USUAL TIME

MEMBER OF
  AMERICAN DENTAL ASSOCIATION
  AMERICAN ORTHODONTIC SOCIETY
  AMERICAN ASSOCIATION OF
    FUNCTIONAL ORTHODONTICS