Perry J. BINGHAM, D.D.S., and the American Academy of Implant Dentistry, Plaintiffs,

v.

Cathleen HAMILTON, in her Official Capacity as Director, California Department of Consumer Affairs, et al., Defendants.

No. CIV. S–99–0499 DFL JFM.

United States District Court, E.D. California.

May 15, 2000.

Richard W Nichols, McDonough Holland and Allen, Sacramento, CA, Frank R Recker, pro hac vice, Frank R Recker and Associates, Marco Island, FL, for Plaintiffs.

Joel S Primes, Attorney General's Office of the State of California, Sacramento, CA, for Defendant.

## MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

This is a First Amendment commercial speech case in which plaintiffs Perry Bingham and the American Academy of Implant Dentistry (AAID) challenge the California State Board of Dental Examiners' ("California Dental Board" or "Dental Board") enforcement policy prohibiting the advertisement of certain credentials by California licensed dentists. Plaintiffs now move for summary judgment. For the reasons stated below, the motion will be granted.

## I.

Implant dentistry consists of the placing of "devices for attaching artificial replacement teeth to the same bones to which natural teeth are anchored."[1] (Pls.' Exh. DD, Defs.' Regulatory File, at 546, AAID Position Paper: Specialty Recognition and the Future of Dental Implants.) This case arises from the interaction of four sets of facts or circumstances concerning the practice of implant dentistry. First, any dentist with a general license to practice as a dentist may perform implant dentistry in California. There is no requirement of any special training or education beyond that required for the license to practice as a dentist. As a consequence, any licensed dentist may advertise that he or she practices implant dentistry. Second, implant dentistry is not one of the eight specialities recognized by the American Dental Association (ADA) and therefore no ADA credentials are available in implant dentistry as a distinct field or specialty. However, the ADA does award credentials in oral surgery, periodontics, and prosthodontics, fields that include implant dentistry, but that require extensive post graduate academic training. (See Berger Decl. ¶¶ 3–4.) Third, the AAID, a national dentist organization founded in 1953 with some 211 California members, (see Compl. ¶ 13), arguably fills the gap between the general dentist and the ADA specialist by awarding the credentials of "Fellow" and "Diplomate" in implant dentistry to licensed dentists who

---

1. According to the AAID, "[u]nlike most current forms of dentures, which sit on top of the gums or are attached to existing teeth, implants may be inserted into the bone, functioning like an artificial tooth root, or may be placed directly against the bone to support a dental prosthesis." *Id.*

have completed certain requirements.[2] These requirements include testing, several hundred hours of continuing education in implant dentistry, and clinical experience also in implant dentistry. (*See* Shuck Aff. at 1.) The AAID requirements, however, do not include post graduate academic training at an accredited dental or medical school.

Finally, as applied to dentists, Cal. Bus. & Prof.Code § 651(h)(5)(A) allows a dentist to advertise credentials or a specialty certification awarded by a private or public board only if that board or agency is recognized by the California Dental Board. Until recently the California Dental Board appeared to rely upon the ADA in making recognition decisions. More recently, however, as a result of the predecessor lawsuit to this action, the California Dental Board has developed its own recognition standards which have been reduced to a proposed regulation.

Plaintiff Bingham is a California licensed dentist practicing general dentistry. He is a member of the AAID and has been awarded the "Fellow" and "Diplomate" rankings in implant dentistry from that organization. Not surprisingly, Bingham and other members of the AAID want to advertise their AAID credentials and have sought permission to do so from the Dental Board. As explained below, the California Dental Board's legal position has undergone some development in the course of this litigation. Its bottom line has not changed, however. It does not recognize the AAID or its credentials, and it states that under § 651(h)(5)(A), Cal. Bus. & Prof.Code, it is entitled to take enforcement action against any dentist who advertises AAID credentials unless the dentist has one academic year studying implant dentistry at an accredited dental or medical school.

## A.  Prior Litigation History

The plaintiffs first challenged the California Dental Board's position in an action filed in September 1997. The court dismissed that action as unripe. *See Bingham v. Berte,* Civ. No. S–97–1817 DFL JFM (*Bingham I* ), Order of Jan. 15, 1998. At the time of the prior action, the Dental Board followed an informal policy of deferring to the ADA as to which credentials and specialities should be recognized. In the federal action, plaintiffs argued that the ADA improperly had declined to recognize implant dentistry in order to protect other existing specialities from competition. Whatever the merits of that position, the court concluded that those arguments had not been presented to the Dental Board in the first instance and that plaintiffs had not yet sought a declaratory decision from the Dental Board either approving or disapproving a particular proposed advertisement. Thus, prior to litigating their claim in federal court, the plaintiffs were ordered to "seek relief from the Dental Board directly." [3] *Id.* at 4. The court noted:

> The Dental Board also must consider whether a flat ban on any advertisement of AAID credentials—even if accompanied by appropriate disclaimers—is required to protect the public from misleading advertising. The Dental Board may well conclude that the proposed advertisement should be permitted. Even if it reaches a different conclusion, the record will be far clearer as to why the Dental Board concludes that such a

---

2.  The "Fellow" designation is awarded directly by the AAID; the higher rank of "Diplomate" is awarded by the American Board of Oral Implantology/Implant Dentistry, a certifying board sponsored by the AAID. (Compl.¶ 11.)

3.  At oral argument on December 5, 1997 in *Bingham I,* the defendants' counsel indicated that the plaintiffs could ask for a declaratory decision from the Dental Board as to whether their proposed advertisement would be in compliance with § 651(h)(5)(A). (Rep.'s Trans. of Proceedings, *Bingham I,* Dec. 5, 1997, at 8.)

ban is justified in the circumstances here.

*Id.*

On February 9, 1998, the plaintiffs requested, by letter, a declaratory decision from the Dental Board under the terms of Cal. Gov.Code § 11465.20.[4] (*See* Compl. ¶ 8.) Despite an exchange of letters between counsel for plaintiffs and counsel for defendants, no action has ever been taken by the Dental Board on plaintiffs' request for a declaratory decision, presumably because at roughly the same time as the request the Dental Board began drafting a regulation to address the issues presented by *Bingham I.*

On March 15, 1999, the plaintiffs again filed a complaint in federal court, "containing substantially the same legal assertions" as the earlier September 29, 1997 complaint. (Compl.¶ 6.) Since the filing of that complaint, the Dental Board has proposed Cal.Code Regs. tit. 16 § 1054 as its mechanism to enforce Cal. Bus. & Prof. Code § 651.

### B. The Dental Board's Current Interpretation of § 651

Although § 1054 has not gone into effect, the Dental Board currently interprets and enforces Cal. Bus. & Prof.Code § 651 according to the standards contained in the proposed regulation.[5] According to the Executive Officer of the Dental Board, "[t]he Board policy for advertising of credentials issued by Recognized Dental Specialty Boards and Associations is expressed in proposed Section 1054."[6] (Coleman Decl. ¶ 11.)

Thus, the Dental Board's current policy under Cal. Bus. & Prof.Code § 651 is that:

(a) A dentist may advertise that he or she has credentials from one of the dental specialty boards recognized by the Board of Dental Examiners of the State of California, pursuant to Section 1054.

(b) A dentist may not advertise credentials granted by a private or public board or parent association which is not recognized pursuant to Section 1054, unless:

(1) The private or public board or parent association which grants the credentials currently requires:

(A) The successful completion of a formal advanced education program at or affiliated with an accredited dental or medical school equivalent to at least one academic year beyond the predoctoral curriculum;

(B) Successful completion of an oral and written examination based on pyschometric principles; and

(C) Training and experience subsequent to successful completion of (A) and (B) above, to assure competent practice in the dental discipline as determined by the private or public board or parent association which grants the credentials.

---

4. Following the dismissal of *Bingham I*, defendants' counsel sent a letter to the Dental Board recommending that the Dental Board propose a formal regulation. (*See* Letter from Primes to Coleman, Jan. 22, 1998.)

5. On January 26, 2000, the California Office of Administrative Law (OAL) disapproved the Dental Board's proposed regulation for procedural reasons; according to defendants, OAL disapproved the proposed regulation because it failed to comply with the necessity and clarity standards of Cal. Gov.Code § 11349.1. (*See* Coleman Decl. Exh. 2, Decision of Disapproval of Regulatory Action, File No. 99–1214–08S, Feb. 2, 2000, at 1.) At oral argument on March 24, 2000, defendants' counsel stated that the Dental Board had resubmitted the same proposed regulation to the OAL after addressing the procedural deficiencies, and that it expected approval in April 2000. According to the OAL's internet web page, it appears that the OAL has approved the regulation and that it is scheduled to become operative on May 24, 2000. *See* <http://ccr.oal.ca.gov/>.

6. Further, at oral argument on March 24, 2000, defendants' counsel conceded that Bingham would violate the Dental Board's current policy, as expressed in the proposed regulation, if he were to advertise credentials awarded by the AAID.

(2) Any advertisement which references the dentist's credentials shall include the following statement "[Name of announced dental discipline] is a discipline not recognized as a dental specialty by the Board of Dental Examiners of the State of California."

(3) The dentist discloses that he or she is a general dentist in any advertising which references the dentist's credentials.

Cal.Code Regs. tit. 16 § 1054.1 (proposed).

The AAID is not recognized by the Dental Board. Thus, under the Dental Board's current enforcement policy, AAID credentials cannot be advertised since they are not earned after an academic year of postdoctoral curriculum at an accredited dental or medical school.[7] Because plaintiff Bingham has not completed one year of post graduate study in implant dentistry, and because the AAID is not recognized by the Dental Board, were he to advertise his AAID credentials, he would violate Cal. Bus. & Prof.Code § 651 and could be subject to sanctions, including revocation of his license. *See* Cal. Bus. & Prof.Code § 652.

Plaintiffs bring this action to challenge the one year educational requirement. They do not attack the Dental Board's disclosure requirements nor do they quarrel with the testing, training and experience requirements.

7. At oral argument on March 24, 2000, defendants' counsel indicated that AAID members who have satisfied the requirements of proposed Cal.Code Regs. tit. 16 § 1054.1(b) could advertise their AAID credentials. Thus, AAID credential holders who have completed one post graduate academic year in implant dentistry at an accredited medical or dental school may not be subject to disciplinary action. However, since the defendants have conceded that Bingham has not satisfied those requirements, he cannot advertise his AAID credentials.

## II. Ripeness

The Dental Board argues that the plaintiffs' claim is not ripe for adjudication because Cal.Code Regs. tit. 16 § 1054 is not yet operative. Instead, the Dental Board argues that the court should abstain from jurisdiction until the regulation goes into effect. The basic problem with this argument, however, is that what is being challenged is the Dental Board's present enforcement policy under § 651, and this policy is now in place and does not wait upon implementation of § 1054.

"In considering whether a case is ripe for review, a court must evaluate '[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration.'" *US West Communications v. MFS Intelenet, Inc.,* 193 F.3d 1112, 1118 (1999) (quoting *Winter v. California Med. Review, Inc.,* 900 F.2d 1322, 1325 (9th Cir.1989)) (brackets in original). "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Winter,* 900 F.2d at 1325.

Unlike the claims in *Bingham I,* the plaintiffs have presented sufficient evidence of the Dental Board's enforcement policy. The Dental Board has conceded in its opposition papers, (*see* Defs.' Opp. Summ. J. at 5), in its answers to the plaintiffs' requests for admissions,[8] and at oral argument on March 24, 2000, that Bingham and other members of the AAID would be subject to sanctions if they were

8. *See* Defs.' Responses to Pls.' Request for Admissions, No. 36 ("The Board's interpretation and implementation of Section 651 of the Business and Professions Code is outlined in Section 1054, et seq."); *id.,* No. 37 ("The Board's current interpretation of Section 651 of the California Business and Professions Code is outlined in Section 1054, et seq."); *id.,* No. 46 ("If the Plaintiff/licensee does not comply Section 1054, the Board would admit that it would be unlawful for him to advertise AAID and ABOI/ID credentials."). *But see id.,* Nos. 3, 19 & 44 (denying that the proposed regulation is the Dental Board's current enforcement policy).

to advertise their AAID credentials. It is no longer "speculative" as to whether the plaintiffs would be subject to discipline for advertising AAID credentials. *See Bingham I,* Order of Jan. 15, 1998, at 3. As a result, the controversy is primarily legal: whether the Dental Board's advertising prohibition violates the First Amendment.

The plaintiffs also present a compelling argument for hardship. Over two years have elapsed since the dismissal of *Bingham I.* During this two-year period, Bingham and members of the AAID have been unable to advertise their AAID credentials without justifiable fear of professional discipline from the Dental Board. This injury will persist if their claim is further delayed.

The Dental Board also argues that plaintiffs have failed to exhaust administrative remedies. Yet it is unclear what further steps plaintiffs could take to challenge the Dental Board's present enforcement policy. After *Bingham I* was dismissed, plaintiffs promptly sought declaratory relief from the Dental Board to clarify whether AAID certifications could be advertised under § 651. Although their request for declaratory relief was not acted upon,[9] the Dental Board in fact did clarify and articulate its enforcement policy, and this clarification is embodied in proposed § 1054. There are no administrative remedies left to exhaust.

■ Finally, the Dental Board argues that if plaintiffs' claim is ripe for adjudication, the court should nonetheless abstain from exercising its jurisdiction under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), because the Dental Board's proposed regulation is before the OAL in an ongoing administrative proceeding. *Younger* abstention, however, only applies to proceedings that are judicial in nature. *See New Orleans Public Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 370, 109 S.Ct. 2506, 2518, 105 L.Ed.2d 298 (1989). The OAL's review of the proposed regulation for compliance with the necessity and clarity standards of the Government Code is not a judicial proceeding. *Younger* abstention, therefore, does not apply.

Plaintiffs claim is ripe for adjudication. The record is developed, the dispute is primarily legal, and the plaintiffs would suffer hardship with continued delay.

### III. Commercial Speech

■ The plaintiffs' advertisement of their AAID credentials constitutes commercial speech protected under the First Amendment. *See Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 770, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976). The states may prohibit false, deceptive or misleading advertising. *See id.* at 771–72, 96 S.Ct. at 1830–31. "Commercial speech that is not false, deceptive, or misleading can be restricted, but only if the State shows that the restriction directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest." *Ibanez v. Florida Dep't of Business and Professional Regulation, Bd. of Accountancy,* 512 U.S. 136, 142, 114 S.Ct. 2084, 2088, 129 L.Ed.2d 118 (1994) (citing *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980)); *see also In re R.M.J.,* 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982).

9. "A decision not to issue a Declaratory Decision is within the discretion of the Agency. An Agency's failure to take action within 60 days of receipt of an application constitutes a denial of the application." Cal.Code Regs. tit. 1 § 1274(a). When taking action on an application for a declaratory decision, the Dental Board is required to commence a Declaratory Decision Proceeding with specific notice requirements. *See id.* at § 1272. "Within 60 days of receipt of an application ... the Agency shall serve on the Applicant ... notice of the Declaratory Decision Proceeding." *Id.* at § 1276(a). Since the Dental Board did not respond to the plaintiffs' request within 60 days of its receipt, the Dental Board denied the plaintiffs' application for a declaratory decision.

*A. Commercial Speech in Professional Services*

■ The Supreme Court has held that the advertising of credentials from professional organizations is not inherently misleading to the public. In *Peel v. Attorney Registration & Disciplinary Comm'n of Illinois,* 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990), a plurality of the Court found that an attorney who designated himself as a "Certified Civil Trial Specialist by the National Board of Trial Advocacy" was not engaged in misleading advertising. In overturning the Illinois Supreme Court's finding that the general public might be misled by the advertisement and could mistakenly believe that the lawyer was more qualified than his peers or had received a credential from an official state organization, the Court held:

> This analysis confuses the distinction between statements of opinion or quality and statements of objective facts that may support an inference of quality. A lawyer's certification ... is a verifiable fact, as are the predicate requirements for that certification. Measures of trial experience and hours of continuing education, like information about what schools the lawyer attended or his or her bar activities, are facts about a lawyer's training and practice. A claim of certification is not an unverifiable opinion of the ultimate quality of a lawyer's work or a promise of success but is simply a fact, albeit one with multiple predicates, from which a consumer may or may not draw an inference of the likely quality of an attorney's work in a given area of practice.

*Id.* at 101, 110 S.Ct. at 2288 (internal citations omitted). Moreover, the Court concluded that even if the public might potentially be misled by a term such as "certified" or "specialist," less restrictive regulations requiring disclosure could address this potential well short of an outright prohibition: "a State might consider screening certifying organizations or requiring a disclaimer about the certifying organizations or the standards of a specialty. A state may not, however, completely ban statements that are not actually or inherently misleading, such as certification as a specialist by bona fide organizations ...." *Id.* at 110, 110 S.Ct. at 2292–93 (internal citations omitted).

Similarly, in *Ibanez v. Florida Dep't of Business and Professional Regulation, Bd. of Accountancy,* 512 U.S. 136, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994), the Florida Board of Accountancy reprimanded a lawyer for advertising her credentials as a Certified Financial Planner (CFP)—awarded by a private organization—beside her credentials as a Certified Public Accountant (CPA)—licensed by the Board of Accountancy. The Board of Accountancy argued that the use of the term "certified" in her CFP credentials "inherently mislead[s] the public into believing that state approval and recognition exists." *Id.* at 142, 114 S.Ct. at 2088 (brackets in original).

■ Applying *Peel,* the Court held that without concrete evidence of deception caused by the credentials, the evidence was "not sufficient to rebut the constitutional presumption favoring disclosure over concealment." *Id.* at 145, 114 S.Ct. at 2090 (citation omitted). The Court held that the mere claim that the commercial speech may be potentially misleading cannot supplant the state's "burden to 'demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'" *Id.* at 146, 114 S.Ct. at 2090 (quoting *Edenfield v. Fane,* 507 U.S. 761, 771, 113 S.Ct. 1792, 1800, 123 L.Ed.2d 543 (1993)).

The reasoning in *Peel* and *Ibanez* is applicable to any professional advertising, including the advertisement of dental credentials. *See Borgner v. Cook,* 33 F.Supp.2d 1327 (N.D.Fla.1998) (applying *Peel* and *Ibanez* in a suit involving the advertising of dental credentials); *cf. Parker v. Commonwealth of Kentucky, Board of Dentistry,* 818 F.2d 504 (6th Cir.

1987). Under *Peel* and *Ibanez*, then, the Dental Board's prohibition of AAID credentials can only be sustained if there is a real, demonstrable potential that the public may be misled, and if the prohibition is necessary to address this problem, as opposed to lesser measures.

## B. AAID Credentials and Commercial Speech

The Dental Board's contention that the advertisement of AAID credentials will mislead members of the public is not persuasive. To begin with, as in *Peel*, there is nothing inherently or necessarily misleading about the advertisement of the AAID's credentials. The Dental Board does not contend that the credentials are meaningless or that the organization is a sham. The AAID is a bona fide organization, and it actually issues credentials according to certain published standards. Thus, the AAID credentials that Bingham and other AAID members desire to advertise exist and members of the public can confirm this fact as well as the predicate acts required for AAID certification. In short, the advertising is not false, deceptive or inherently misleading.

Nonetheless, the Dental Board apparently sees a potential for confusion because consumers might believe that the AAID's credentials are in some way sponsored by the Dental Board. The Board also apparently believes that consumers assume that professional credentials are backed by at least one year of post graduate academic work and further that members of the public may not understand the difference between an AAID certification and the more rigorous requirements of the various ADA specialties. While plausible con-

cerns, the Dental Board has virtually no evidence beyond conjecture that any of these concerns has real substance.[10]

The only evidence that the Dental Board offers that the advertising of AAID credentials would be misleading is conclusory, anecdotal, and speculative. (*See* Coleman Decl., *Bingham I,* ¶ 6 ("In my capacity as Executive Director of the Board, I am aware that there have been complaints regarding consumer confusion caused by dental advertising of specialty board certification in specialty boards not recognized by the ADA."); Berger Decl., *Bingham I,* ¶ 9 ("[T]he public would be mislead [sic] into believing that an AAID or ABOL/ID 'Fellow' or 'Diplomate' had the educational and examination requirements of an oral surgeon and specialist in prosthodontics when in fact they do not."); Atwood Decl. ¶¶ 4–8 (anecdotal evidence from a dental patient who was allegedly misled by AAID credentials); Cincotta Decl. ¶¶ 5–18 (anecdotal evidence from a lawyer who represents a dental patient who allegedly received inadequate dental care from an AAID accredited dentist).)[11] The Dental Board has not offered any empirical evidence—in the form of studies or surveys—which would support a conclusion that the advertising of AAID credentials would mislead the general public. *See Ibanez,* 512 U.S. at 146, 114 S.Ct. at 2090; *Peel,* 496 U.S. at 106, 110 S.Ct. at 2290. More particularly, there is no evidence that members of the public assume that the AAID credentials at issue here are backed by at least one year of post graduate study in implant dentistry.

Even assuming that the Dental Board had made an adequate evidentiary showing of the potential for deception, it has failed to show that a total prohibition is neces-

---

10. The Dental Board does not contend that one year of post graduate education is required to perform implant dentistry. As discussed in Part I *supra,* any dentist with a general license to practice as a dentist may perform implant dentistry.

11. It is significant to note that the patient's declaration, (Atwood Decl. ¶¶ 4–8), and the lawyer's declaration, (Cincotta Decl. ¶¶ 5–18),

only allege that the AAID dentist provided substandard care. The patient alleges that she believed the dentist was well qualified because of the AAID credentials. (*See* Atwood Decl. ¶¶ 4–8.) As a result, these declarations do little to bolster the Dental Board's claim that the public would be misled by credentials which did not require an academic year of postdoctoral education.

sary. The Dental Board's concern as to sponsorship could be addressed by requiring disclosure in the advertisement that the AAID is not recognized by the Dental Board or the ADA. The proposed regulation requires disclosure that implant dentistry is not a discipline recognized by the Dental Board; an equivalent disclaimer might state that the AAID is not affiliated with the California Dental Board. Similarly, the Dental Board's concern that the public will make incorrect assumptions as to the requirements for certification could be addressed by requiring the advertisement to summarize the requirements for certification. *See Bates v. State Bar of Arizona,* 433 U.S. 350, 375, 97 S.Ct. 2691, 2704, 53 L.Ed.2d 810 (1977).

In short, the Dental Board fails to show that the advertisement of AAID credentials is inherently misleading. It further fails to show that the advertisement of AAID credentials will mislead the public into believing that the dentist placing the advertisement has at least one year of post graduate academic work in implant dentistry. Finally, the Dental Board fails to show that any potential for consumer deception cannot be addressed by disclosure requirements rather than prohibition.

## IV. Relief

The court finds and declares that the Dental Board's enforcement policy is unconstitutional to the extent that it prohibits advertisement of AAID credentials unless the advertising dentist has at least one year of post graduate academic study in implant dentistry. The remainder of the Dental Board's enforcement policy under Cal. Bus. & Prof.Code § 651 is not before the court and, therefore, remains undisturbed.

## V.

The plaintiffs' motion for summary judgment is GRANTED.

IT IS SO ORDERED.