RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

RUSSELL KISER, D.D.S., M.S.,

        *Plaintiff-Appellant,*

    *v.*

HARRY KAMDAR, Board Executive Director; MARYBETH D. SHAFFER; CONSTANCE F. CLARK; W. CHRIS HANNERS; ASHOK DAS; MARTIN CHAMBERS; PATRICIA GUTTMAN; CHARLES SMITH; JEAN HUBER; SUSAN JOHNSTON; ANN AQUILLO,

        *Defendants-Appellees.*

No. 15-3335

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:12-cv-00574—Algenon L. Marbley, District Judge.

Argued: April 28, 2016

Decided and Filed: August 5, 2016

Before: BOGGS and KETHLEDGE, Circuit Judges; and STAFFORD, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Todd W. Newkirk, FRANK R. RECKER & ASSOCIATES, Columbus, Ohio, for Appellant. Katherine J. Bockbrader, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Todd W. Newkirk, FRANK R. RECKER & ASSOCIATES, Columbus, Ohio, Frank R. Recker, FRANK R. RECKER & ASSOCIATES, Marco Island, Florida, for Appellant. Katherine J. Bockbrader, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

---

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

———————

**OPINION**

———————

BOGGS, Circuit Judge.   Dr. Russell Kiser is a licensed dentist with postdoctoral education in endodontics.   Nevertheless, Ohio bans him from calling himself an "endodontist" because he performs procedures outside the scope of that specialty.   We consider whether Kiser may challenge Ohio's ban under the First and Fourteenth Amendments.

## I.  Background

The Ohio State Dental Board is a state agency that regulates the practice of dentistry in Ohio.   To be a Board-recognized specialist, a dentist must complete a postdoctoral education program in a specialty recognized by the American Dental Association (ADA) and limit the scope of his practice to his specialty.   Ohio Admin. Code 4715-5-04(B)(2).   Any dentist that does not meet these requirements is considered a general dentist.

A dentist's status as a Board-recognized specialist affects the terminology that he may use in advertisements.   According to the Board's regulations:

> The use of the terms "specialist", "specializes" or "practice limited to" or the terms "orthodontist", "oral and maxillofacial surgeon", "oral and maxillofacial radiologist", "periodontist", "pediatric dentist", "prosthodontist", "endodontist", "oral pathologist", or "public health dentist" or other similar terms which imply that the dentist is a specialist may only be used by licensed dentists [recognized as a specialist by these regulations.]

*Id.* 4715-5-04(C); *see also id.* 4715-13-05(C).   Any general dentist who uses the above-mentioned terms in his advertisements can have his dental license placed on probationary status, suspended, or revoked by the Board.   Ohio Rev. Code § 4715.30(A)(3), (C).   Although a general dentist "is not prohibited from announcing to the public that he renders specific types of services, including . . . specialty services," he may not use "words or phrases which are otherwise prohibited by this rule."   Ohio Admin. Code 4715-13-05(E).

The plaintiff in this case, Dr. Russell Kiser, is a licensed dentist with postdoctoral education in endodontics (i.e., root-canal procedures).   Although Kiser has the specialized

education needed to be a Board-recognized specialist, he has chosen not to limit his practice exclusively to endodontics. As a result, the Board's regulations treat him as a general dentist, and he is banned from using the word "endodontist" in his advertisements. This regulatory scheme makes it difficult for Kiser to differentiate himself from general dentists who lack specialized education in endodontics, but are nonetheless qualified to perform root-canal procedures.

In August 2009, Kiser received a letter from the Board informing him that he was "perform[ing] procedures outside the scope of endodontics," while "holding [him]self out as a specialist." The letter warned Kiser:

> [I]f you wish to continue to declare yourself as a specialist in endodontics, you must advertise [your services] accordingly, and limit your practice . . . . If you would prefer to practice in areas outside the scope of endodontics, you may do so by no longer holding yourself out as a specialist in endodontics. You can be a general dentist, and then advertise and perform specialty services you are qualified to perform, so long as you also state you are a general dentist.

The Board did not take any further action at that time. In May 2012, Kiser requested that the Board review signage for his office that would include the terms "endodontist" and "general dentist." The Board neither approved nor rejected Kiser's proposed signage. Instead, it sent him a letter recommending that he consult with legal counsel, along with copies of the dentist-advertising regulations and the 2009 warning letter.

Kiser responded by suing the members of the Board for declaratory and injunctive relief, challenging the dentist-advertising regulations as violating: (1) the First Amendment right to commercial speech; (2) substantive due process; (3) procedural due process; and (4) equal protection. The district court dismissed the case for lack of ripeness, but a panel of this court reversed because Kiser "alleged facts demonstrating that he faces a credible threat that the Board's advertising regulations will be enforced against him in the future." *Kiser v. Reitz*, 765 F.3d 601, 604 (6th Cir. 2014). On remand, the district court granted the Board's Rule 12(b)(6) motion to dismiss all of Kiser's claims. Kiser appealed.

## II.  Standard of Review

We review the district court's grant of the defendants' motion to dismiss de novo.  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).  Ruling on a motion to dismiss is a context-specific task that requires us to draw on our judicial experience and common sense.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ibid.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.  First Amendment

In dismissing Kiser's First Amendment commercial-speech claim, the district court stated that it found "no First Amendment violation here because advertisement for both specialist and general dentistry services violate Ohio laws, which would constitute advertisement for illegal activity."  The Board defends that decision on the ground that "practicing outside a specialty" is an illegal activity.

The problem with the Board's illegal-activity argument is that there is nothing illegal about performing endodontic procedures while providing general dentistry services.  Indeed, the regulations actually contemplate that some dentists may wish to engage in such a dual practice: "A general dentist is not prohibited from announcing to the public that he renders specific types of services, including, but not limited to, specialty services, . . . [provided] that the announcement does not contain words or phrases which are otherwise prohibited by this rule."  Ohio Admin. Code 4715-13-05(E).  This provision makes it clear that a dentist may lawfully perform endodontic procedures while providing general dentistry services as long as he complies with the Board's advertising regulations.  The Board itself acknowledged this fact in its 2009 letter when it told Kiser:  "If you would prefer to practice in areas outside the scope of endodontics, you may do so by no longer holding yourself out as a specialist in endodontics."

Properly understood, the challenged regulations do not ban Kiser from practicing outside of his specialty.  Rather, they ban him from doing so *while advertising that he is an*

*"endodontist."*   The challenged regulations are violated only if Kiser uses certain terms in his advertisement, and whether his advertisement contains unlawful *terminology* is a different question from whether it advertises unlawful *conduct*.  The district court conflated these two questions when it held that, because the advertisement "violates Ohio law," it is "an advertisement for illegal activity."  Under that interpretation of the illegal-activity exception, literally every advertising ban would be constitutional because the ban itself would cause the illegal-activity exception to apply.  That outcome is clearly at odds with the Supreme Court's repeated invalidations of bans on commercial speech.  *See, e.g., Bates v. State Bar of Az.*, 433 U.S. 350 (1977) (striking down a ban on attorney advertising); *Linmark Assocs., Inc. v. Twp. of Willingboro*, 431 U.S. 85 (1977) (striking down a ban on the display of "For Sale" or "Sold" signs).

The correct inquiry for determining the illegal-activity exception's applicability is whether the advertised conduct is illegal.  For instance, in *Pittsburgh Press Co. v. Human Relations Commission*, 413 U.S. 376 (1973), the Court upheld a ban on employment advertisements that discriminate on the basis of sex.  *Id.* at 378–81.  Crucial to the Court's analysis was the fact that sex discrimination in employment "is illegal commercial activity." *Id.* at 388.  The Court explained:  "We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes. . . . The illegality in this case may be less overt, but we see no difference in principle here."  *Ibid.* *Pittsburgh Press* stands for the proposition that the government may ban an advertisement if it advertises unlawful conduct.  Because the advertised conduct in this case is lawful, the illegal-activity exception does not apply.

The Board also argues that Kiser's proposed advertisement is false, misleading, or deceptive.  Specifically, the Board claims that, by using the word "endodontist," Kiser is implying that he is a specialist, when he is actually a general dentist.  If Kiser had used the phrase "Board-recognized endodontist," or included language implying that his practice was limited exclusively to endodontics, the Board might have a point.  But Kiser's proposed advertisement merely identifies him as an "endodontist" and also states that he is a "general dentist," which dispels the notion that his practice is limited exclusively to endodontics.

We disagree with the Board's contention that the mere use of the word "endodontist"—even when it is followed by the words "general dentist"—necessarily communicates that Kiser is a specialist within the meaning of the Board's regulations.  Those words could reasonably be read to communicate that Kiser practices general dentistry but also has specialized training in endodontics.  That truthful, nonmisleading information would be useful to patients because it sets Kiser apart from general dentists who are qualified to perform endodontic procedures but lack such specialized training.  The Board's insistence that the word "endodontist" *must* convey that Kiser is a Board-recognized specialist—because the Board has said so—strikes us as an example of the government using political language to prevent us from considering the nuances of the situation.  *See* George Orwell, *Politics and the English Language* (1946); Lewis Carroll, *Through the Looking-Glass and What Alice Found There* 124 (1872) ("'When I use a word,' Humpty Dumpty said in a rather scornful tone, 'it means just what I choose it to mean——neither more nor less.").  Based on the facts alleged in the complaint, we cannot conclude at this stage of the litigation that Kiser's advertisement is false, misleading, or deceptive.  Kiser's complaint properly alleges a violation of his First Amendment right to commercial speech, and the applicable test for considering his claim is the intermediate-scrutiny analysis set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980).

Under the *Central Hudson* test, the government has the burden of proving that the challenged law is justified by a substantial government interest.  *Id.* at 566.  The Board argues that the government has a substantial interest in distinguishing between general practitioners and specialists, citing *Parker v. Commonwealth of Kentucky, Board of Dentistry*, 818 F.2d 504 (6th Cir. 1987).  In that case, we held that Kentucky's dentist-advertising statutes were unconstitutional, but "in no way impl[ied] that a state does not have a substantial interest in enabling the public to distinguish between general practitioners and specialists or in ensuring the professional conduct of dentists."  *Id.* at 510–11.  We do not read this passage from *Parker* as relieving the Board of its burden to explain the particular interest that it seeks to advance with the particular regulations that are challenged in this case.  The Board's mere assertion that it has a substantial interest in distinguishing between specialists and general dentists along the lines drawn by the challenged regulations is not enough to satisfy the rigors of the *Central Hudson*

test. In order for the regulations to survive judicial scrutiny, the Board must present facts and evidence to the court that persuasively demonstrate the existence of the government's purported interest.

Assuming that the challenged regulations advance a substantial interest, the Board must also show that they advance that interest in a direct and material way. *See Central Hudson*, 447 U.S. at 566. Here too, the court may not simply rely on the government's "own belief in the necessity for regulation," but must actively scrutinize the evidence and question the government's assertions. *Pagan v. Fruchey*, 492 F.3d 766, 771 (6th Cir. 2007) (en banc). The government's burden "is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (quoting *Edenfeld v. Fane*, 507 U.S. 761, 770–71 (1993)).

If the previous two elements of the *Central Hudson* test are satisfied, the Board must still prove that the regulations are not more extensive than necessary. *See Central Hudson*, 447 U.S. at 566. Although the government is not required to use the "least restrictive means" to achieve its interest, the challenged regulations must be "narrowly tailored" such that they are "in proportion to the interest served." *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989). This element of the *Central Hudson* test allows the court to review the reasonableness of the government's calculation of the costs and benefits associated with the challenged law's burden on speech. *Pagan*, 492 F.3d at 771.

All of this is to say that, when First Amendment rights are at stake, the government's assertions cannot be taken at face value. The government bears the burden of satisfying the *Central Hudson* standard, and the court must scrutinize the government's arguments as they are presented, without "supplant[ing] the precise interests put forward by the State with other suppositions." *Edenfield*, 507 U.S. at 768. It is only through active judicial scrutiny of regulations that commercial speech can continue "to inform the public of the availability, nature, and prices of products and services, and thus perfor[m] an indispensable role in the allocation of resources in a free enterprise system." *Bates*, 433 U.S. at 364.

On remand, the district court should pay close attention to the similarities between this case and *Parker*.  The Kentucky statutes that we invalidated in *Parker* were extremely similar to the regulations challenged here.  Kentucky required Board-recognized specialists to limit their practice to their area of specialization, and although general dentists could perform procedures in areas of specialization, they were banned from using in advertisements certain language reserved for specialists.  *Parker*, 818 F.2d at 506.  Specifically, the challenged statutes banned the use of "the name of [a] specialty" or "other phrases customarily used by qualified specialists that would imply to the public that he is so qualified."  *Ibid.*  Parker was a general dentist who performed orthodontic procedures, which comprised about fifty percent of his practice, and he used the words "orthodontics," "braces," and "brackets" in his advertisement.  *Ibid.*  The Board instituted disciplinary proceedings against Parker, and Parker filed a lawsuit in federal court under the First and Fourteenth Amendments.  *Id.* at 506–07.  We held that the statutes, as applied to Parker, were unconstitutional; because Parker could legally practice orthodontics, he was entitled to use that term along with other terms associated with orthodontics.  *Id.* at 511.  In reaching that conclusion, we noted that "[i]f a state regulates speech which is potentially misleading . . . 'the preferred remedy is more disclosure, rather than less,'" because "[t]o prefer more disclosure over an outright ban on particular forms of advertising not only protects the advertiser's right to communicate, but also protects the general public's interest in receiving information."  *Id.* at 509 (quoting *Bates*, 433 U.S. at 375).  We reasoned that the government's interests could "be furthered by requiring more disclosure," and that "an outright ban on the use of specific, nonmisleading terms is simply not narrowly tailored to meet the state's concern."  *Id.* at 511.

Although the facts of this case are very similar to those in *Parker*, they are not identical. One difference is that, whereas Parker's advertisement used the words "orthodontics," "braces," and "brackets," but not "orthodontist," in this case, Kiser seeks to use the word "endodontist." Another difference is that, if Kiser wanted to use the terms "endodontics" or "root canal" instead of "endodontist," Ohio's regulatory scheme might actually allow for that.  The regulations expressly state that a dentist "is not prohibited from announcing to the public that he renders specific types of services, including . . . specialty services," as long as he does not use "words or phrases which are otherwise prohibited by this rule."  Ohio Admin. Code 4715-13-05(E). However, this provision's effects are far from clear, because the regulations also ban "terms

which imply that the dentist is a specialist," *id.* 4715-5-04(C), and the terms "endodontics" and "root canal" might fall under that catch-all provision. Indeed, *Parker* involved precisely such a catch-all provision in Kentucky, which prohibited "phrases customarily used by qualified specialists that would imply to the public that he is [a specialist]," in addition to banning the use of "the name of [a] specialty." *Parker*, 818 F.2d at 506.

Whether these distinctions make a difference is a question that the district court will be better situated to resolve once it begins to consider the facts and evidence. At this stage in the litigation, it is not our role to decide the merits of Kiser's First Amendment claim. It suffices for us to say that Kiser has properly alleged a violation of his right to commercial speech and that the district court erred when it dismissed his First Amendment claim.

IV.  Substantive Due Process

In light of our holding on Kiser's First Amendment claim, we also reverse the district court's decision on Kiser's Fourteenth Amendment Due Process Clause claim. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech," and it is only through the doctrine of incorporation—through the Fourteenth Amendment's Due Process Clause—that the First Amendment constrains state governments. In the seminal case establishing the right of commercial speech, *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976), the Supreme Court struck down Virginia's restriction on pharmacists' ability to advertise prescription-drug prices. *Id.* at 770. The first sentence of the opinion states that the plaintiffs' suit was brought under the First and Fourteenth Amendments. *Id.* at 749. In the first footnote, the Court stated that this was permissible because "[t]he First Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment." *Id.* at 749 n.1; *see also Parker*, 818 F.2d at 511 (finding regulations on dentist advertising "unconstitutional under the First and Fourteenth Amendments"). Kiser has therefore stated a valid Fourteenth Amendment claim, which is coextensive with his First Amendment claim.

Kiser also argues that the challenged regulations violate his substantive-due-process right to earn a living by preventing him from practicing both endodontics and general dentistry. As

the Board acknowledged in its 2009 letter, however, nothing in the challenged regulations prevents Kiser from performing endodontic procedures while offering general dentistry services, so long as his advertisements comply with the Board's regulations. To the extent that the Board has limited Kiser's ability to practice dentistry, it has done so on the basis of his advertisement's contents. The Supreme Court has repeatedly held that where a particular amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Therefore, this case is properly framed as a commercial-speech case, rather than an economic-liberty case.

## V. Procedural Due Process

Kiser's complaint alleges that the challenged regulations violate procedural due process because they "provide no procedural protection from arbitrary or self-interested determinations by the ADA, which in turn are blindly adopted by the Defendant Board to determine what constitutes the lawful practice of dentistry and related advertising." In his brief, Kiser analogizes this case to *Eubank v. City of Richmond*, 226 U.S. 137 (1912), and *State of Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116 (1928). Those cases invalidated zoning ordinances enacted by local governments that allowed private-property owners to veto certain uses of neighboring property. *See* Alexander Volokh, *The New Private-Regulation Skepticism: Due Process, Non-Delegation, and Antitrust Challenges*, 37 Harv. J.L. & Pub. Pol'y 931, 940–43 (2014) (describing *Roberge* and *Eubank* as establishing a private nondelegation doctrine). According to Kiser, the defendants are analogous to the local government entities in *Roberge* and *Eubank*, and the ADA is analogous to the private-property owners in those cases.

Although the private nondelegation doctrine remains vital, the district court was correct to dismiss Kiser's claim because the ADA "does not limit Plaintiff from practicing general dentistry. The ADA merely publishes a list of specialties, and individual states have the opportunity to use that list for lawmaking purposes." There is a significant difference between actually delegating a decision to private property owners, as was the case in *Roberge* and

*Eubank*, and enacting a regulation that happens to be based on categories established by the ADA. On that basis, *Roberge* and *Eubank* are distinguishable.

To the extent that Kiser's procedural-due-process claim can be construed as arguing that the Board adopted the ADA list of specialties without giving him an adequate opportunity to participate, we agree with the Board that Kiser lacks standing. The Board's adoption of the ADA list of specialties—which includes Kiser's specialty of endodontics—is not the cause of Kiser's alleged injury. *See Allen v. Wright*, 468 U.S. 737, 751 (1984) (holding that a plaintiff must allege an injury that is "fairly traceable to the defendant's allegedly unlawful conduct" in order to have standing). Rather, Kiser's alleged injury was caused by the Board's advertising regulations, which prevent him from using the word "endodontist." We affirm the district court's dismissal of Kiser's procedural-due-process claim.

## VI. Equal Protection

The district court dismissed Kiser's equal-protection claim because "the law does not burden a fundamental right, and it is rationally related to a legitimate government interest." That conclusion is incorrect. The challenged regulations burden Kiser's First Amendment right to commercial speech. In *Chambers v. Stengel*, 256 F.3d 397 (6th Cir. 2001), we considered claims under the First Amendment and the Equal Protection Clause challenging laws that banned the solicitation of accident victims by attorneys within thirty days of an accident. *Id.* at 399. The plaintiff's equal-protection claim was based on the argument that "because the statutes target attorneys—plaintiffs' attorneys in particular—they violate the Equal Protection Clause." *Id.* at 401. In addressing that argument, we held that "[b]ecause regulation of commercial speech is subject to intermediate scrutiny in a First Amendment challenge, it follows that equal protection claims involving commercial speech also are subject to the same level of review." *Ibid.* Here, Kiser has stated a valid equal-protection claim because the challenged regulations discriminate against dentists who do not meet the definition of a Board-recognized specialist by limiting their commercial-speech rights. The appropriate test for reviewing Kiser's claim is intermediate scrutiny under our holding in *Chambers*. By applying rational-basis review instead of intermediate scrutiny, the district court erred.

## VII. Conclusion

For the foregoing reasons, we REVERSE the district court's dismissal of Kiser's First Amendment, substantive-due-process, and equal-protection claims, AFFIRM the court's dismissal of his procedural-due-process claim, and REMAND for further proceedings consistent with this opinion.